IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.   No. 1:15-CR-2220 WJ-1

RODERICK TALK,

    Defendant.

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO RECONSIDER
DENIAL OF MOTION FOR COMPASSIONATE RELEASE**

THIS MATTER IS BEFORE THE COURT on Defendant Roderick Talk's Motion to Reconsider Denial of Motion for Compassionate Release (**Doc. 44**). This Court previously denied Defendant's Motion for Compassionate Release, (Doc. 41), on the grounds that Defendant failed to demonstrate that he had exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A). The Court explicitly declined to reach the merits of Defendant's request because it lacked authority to do so. Defendant now asserts that the Bureau of Prisons ("BOP") has failed to timely respond to his second request for compassionate release and, therefore, his request is ripe for determination by this Court. Having now reviewed the merits of Defendant's Motion,[1] the Court finds that Defendant's Motion for Compassionate Release is not well-taken, and is **DENIED**.

---

[1] The briefing on reconsideration consists of Defendant's Motion, only, as the Government failed to file a timely Response.

**BACKGROUND**

In 2016, Defendant pleaded guilty to voluntary manslaughter and assault with a dangerous weapon in Indian Country. (Doc. 36). As Defendant himself explains, after a day of excessive drinking, Defendant and two other men, his uncle and his friend, got into an argument. (Doc. 41 at 2). Defendant chased the two men in his truck, and ran over his uncle, killing him. (*Id.*). He was sentenced to 80 months imprisonment. (Doc. 36). Defendant, who is a paraplegic and requires the use of wheelchair, is currently incarcerated at Federal Correctional Institution Terminal Island. Additionally, he has tested positive for coronavirus. Defendant cites his medical conditions and the ongoing COVID-19 pandemic as grounds for his compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).[2] The Government opposes Defendant's requested relief, citing Defendant's prior violent felony convictions and arguing that he remains a danger to the community. (Doc. 42).

**DISCUSSION**

**I.     The Court Has Authority to Consider Defendant's Request.**

"Generally, a federal court may not modify a term of imprisonment once imposed." *United States v. Wilson*, 493 F. App'x 919, 921 (citing *Dillon v. United States*, 130 S. Ct. 2683, 2687 (2010)). However, Congress has provided a limited exception to this general rule and allowed for certain "compassionate release" sentence modifications under 18 U.S.C. § 3582(c)(1)(A).

That said, a district court may not consider a request for compassionate release unless and until the prisoner has exhausted all administrative remedies. *See* § 3582(c)(1); *see also United States v. Read-Forbes*, No. CR 12-20099-01-KHV, 2020 WL 1888856, at *3 (D. Kan. Apr. 16, 2020) (discussing administrative exhaustion as a jurisdictional requirement). To effectively

---

[2] Defendant makes a passing reference in his Motion to United States Constitutional Amendments V and VIII. (Doc. 41 at 1.) However, because Defendant's counsel did not develop any argument on those grounds, the Court did not consider them in its analysis.

2

exhaust under § 3582, a prisoner must make an initial request for compassionate release under 28 C.F.R. § 571.61, and appeal a denial pursuant to § 571.63. *See* § 3582(c)(1)(A); *see also* 28 C.F.R. § 571.60–571.64 (Procedures for the Implementation of 18 U.S.C. § 3582(c)(1)(A)). Alternatively, if thirty days have lapsed from receipt of the request by the warden of the facility where the prisoner is incarcerated with no action by the warden, a district court is empowered to consider the prisoner's § 3582(c)(1)(A) motion.

Here, Defendant avers that his case is ripe for determination because he submitted a request to BOP on May 20, 2020, which, to date, BOP has not addressed. Moreover, because 30 days have passed since he submitted that request, Defendant argues he need not pursue further administrative remedies and can seek judicial review. The Court agrees that this matter is ready for judicial review, but for reasons different than those argued by Defendant.

Defendant contends that "30 days is the ceiling on how long the BOP [administrative relief] process may take and the maximum duration an inmate has to wait before getting judicial review." (Doc. 44 at 3). As previously explained by this Court, (Doc. 43 at 2, n. 4), there is a split among district courts regarding the 30-day requirement of § 3582(c)(1)(A). Some courts, such as those cited in Defendant's brief, have concluded that 30 days is the maximum amount of time BOP has to address a defendant's request. *See United States v. Whalen*, No. 1:11-CR-00033-JAW, 2020 WL 3802714, at *5, n. 2 (D. Me. July 7, 2020) (analyzing this split and comparing district court cases). Those courts have held that as long as 30 days have lapsed since the warden's receipt of the request, a defendant may file a motion with the court, regardless of whether he has appealed the warden's timely decision. Other courts have concluded "that the 30-day language is designed to ensure that the Warden acts timely and that when she does, the prisoner needs to exhaust his administrative appeal rights before proceeding to court." *See United States v. Rembert*, No. 2:12-

CR-66-DBH, 2020 U.S. Dist. LEXIS 107423, at *2–3 (D. Me. June 19, 2020).  In the absence of controlling authority from the Tenth Circuit, this Court, after careful review of the statute as well as the reasoning of other district courts, has joined the latter group of courts and held that if a warden has issued a decision within 30 days of an inmate's request, a defendant *must* fully exhaust his administrative rights to appeal before seeking judicial review.

In any case, Defendant's argument on this point is inapposite.  Here, the warden has failed to timely act, and thus the Court is now empowered to review Defendant's request.  That said, having reviewed the record in this case, including Defendant's Presentence Report ("PSR"), the Court concludes that compassionate release is not appropriate in this case.

> **II.    Having reviewed the merits of Defendant's request, the Court concludes he is still a danger to the community, and therefore declines to exercise its discretion to modify his sentence.**

To justify the type of compassionate release that Defendant seeks, the Court must find that "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A).  The Court is required to give due consideration to the criminal sentencing factors set forth in 18 U.S.C. § 3553(a), as well as the applicable policy statements issued by the United States Sentencing Commission, when rendering its decision.  *Id.*  The applicable policy statement here is USSG § 1B1.13: Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A).  This policy statement provides that terminal illness or a serious illness which diminishes the ability of the defendant to provide self-care in a correctional facility can qualify as an extraordinary and compelling reason for sentence modification.  *See* USSG § 1B1.13, app. n. 1.(A)(i)–(ii).  "Compassionate release due to a medical condition is an extraordinary and rare event," *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019), and is discretionary, rather than

mandatory. Notably, to qualify for compassionate release on these grounds, the defendant must not be a danger to the community as provided in 18 U.S.C. § 3142(g). *See* USSG § 1B1.13.

Defendant cites various medical ailments and the fact that he contracted COVID-19 while imprisoned as grounds for his request. On their face, none of the conditions appear to be a terminal or otherwise serious illnesses. *See* USSG, § 1B1.13, app. note. Additionally, Defendant states that his parents are elderly and argues that they "could use his assistance with day to day living." (Doc. 41 at 6). This statement appears to undermine the seriousness of Defendant's health conditions, as if he is healthy enough to assist his elderly parents, it is unlikely that he is suffering from any condition "that substantially diminishes" his ability "to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." *See id.*

That said, the Court is absolutely cognizant of the fact that COVID-19 can be fatal to some individuals who contract this virus, as evidenced by the fact that as of the date of entry of this order more than 150,000 Americans have died from COVID-19. The Court is also keenly aware of the dramatic impact of the coronavirus on the prison population. The Court recognizes the seriousness of the pandemic and that Defendant has health issues that could complicate his recovery from COVID-19. Even the Government concedes that Defendant's various medical conditions likely place him at higher risk of severe injury or death, given the current coronavirus outbreak. (Doc. 42 at 7). But that concession does not end the Court's inquiry. Even assuming, *arguendo*, that Defendant meets the bar of "extraordinary and compelling" reasons due to the unprecedent COVID-19 pandemic, the Court must still consider the § 3553(a) factors and whether Defendant poses a danger to the community if released.

Defendant's Motion (Doc. 41) attempts to downplay his criminal history.  Specifically, he avers that the trial court[3] which oversaw his conviction for aggravated sexual abuse was "reluctan[t]" to impose the verdict required by the Tenth Circuit on appeal.  (*Id.* at 3).  This "reluctance," speculates Defendant, was the trial court doubting the "veracity" of the verdict.  (*Id.*)  But it strikes this Court that any so-called "reluctance" could just as easily be an exemplar of the discomfort that many judges had over the mandatory nature of the sentencing guidelines at that time which limited judicial discretion in sentencing.  *See United States v. Talk*, No. 95-2179, 1995 U.S. App. LEXIS 33739, at *2–3 (10th Cir. Dec. 4, 1995) (noting that many district judges "decried the adoption of the sentencing guidelines" which limited the latitude judges had at sentencing).  In any event, this Court is "reluctant" to ignore the facts underlying Defendant's prior conviction.  There, the Defendant, under the influence of alcohol, was involved in a physical altercation and then attempted to forcibly rape a woman.  *See* PSR at 10.  After the woman fell asleep, she awoke to Defendant having intercourse with her.  *Id.*  While Defendant may believe that he can downplay this conviction, it is still an important factor in the Court's decision.  Even assuming Defendant met every other precondition to qualify for compassionate release, it is still within this Court's discretion to render a decision based on its analysis of whether Defendant is a danger to the community under 18 U.S.C. § 3142(g).  The Court, having exercised its discretion and analyzed whether Defendant is a danger to the community, finds that he is a danger to the community.

While the Court is not unsympathetic to Defendant's confinement to a wheelchair, the Court notes that the instant offense was committed in 2015, more than a decade *after* Defendant was paralyzed in a car accident.  PSR at 14–15.  That, accident, like so much of Defendant's

---

[3] Defendant's case was presided over by the now-deceased Honorable John E. Conway.

history, appears to be part of a larger pattern of severe alcohol abuse. According to the PSR, Defendant was paralyzed from the chest down after a single-vehicle accident in which he was driving under the influence of alcohol, fell at sleep at the wheel, and hit a sign causing his vehicle to roll several times. *Id.* Additionally, Defendant was arrested in 2006 (again, after he was confined to a wheelchair) for a violent assault. Defendant is currently incarcerated as a result of his guilty plea in 2016, when Defendant was confined to a wheelchair, to the crime of voluntary manslaughter when Defendant drove a vehicle after an excessive day of drinking and ran over his uncle killing him.

Simply stated, Defendant does not point the Court toward any evidence suggesting that he is "unlikely to pose a danger to any other person or the community." (Doc. 41 at 3). In fact, Defendant's history tells quite a different story, and his physical and medical limitations have not stopped him from harming others, including taking the life of the victim in this case. Accordingly, there is no support in the record which would allow the Court to conclude that Defendant could be safely released into the community.

## CONCLUSION

Even assuming that Defendant met every requirement under § 3582, because he is still a danger to the community, he cannot be released. The Court is not unsympathetic to Defendant's health problems, nor is it ignorant of the impacts of the COVID-19 pandemic on the prison population. However, for all the foregoing reasons, Defendant's Motion to Reconsider Denial of Motion for Compassionate Release (**Doc. 44**) is **DENIED**.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE